# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**CONSTANTINE VARAZO,**

         **Plaintiff,**

**v.**                                                           **1:16-cv-4228-WSD**

**KEISER CORPORATION,**

         **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Keiser Corporation's ("Defendant") Motion for Summary Judgment [36].

## I.    BACKGROUND

### A.    Facts

On August 27, 2008, Constantine Varazo ("Plaintiff") injured the tip of his ring finger while attempting to move an exercise "spin" bike manufactured by Keiser Corporation ("Defendant"). Keiser manufactured the exercise bike with two different transport mechanisms. The first mechanism involves lifting the bike and tilting it back onto its flywheel, as if moving a wheelbarrow. (Dep. of Dennis Keiser [37.3] ("Keiser Dep.") 10:24-11:4). That mechanism is not at issue in this case. The second mechanism involves raising the front handlebars to deploy two

small wheels in the middle of the bike's base beam. When the user lowers the bike, the wheels latch in place, causing the bike to balance on the wheels. This allows the user to move the bike. (Keiser Dep. at 12:3-14). The second transport mechanism was developed for LA Fitness. From 2002 through 2006, Defendant distributed to LA Fitness approximately 5,400 bikes with this second transport mechanism. (Keiser Dep. at 57:1-6).

At the time of his injury, Plaintiff was a club boxing instructor at LA Fitness. (Dep. of Constantine Varazo [32.1] at 22-23).[1] The boxing class met in a large exercise room where people commonly left equipment, such as exercise bikes, benches, and mats. (Id. at 40). On August 27, 2008, Plaintiff arrived early at LA Fitness to prepare the room for his class. (Id. at 31:3). An exercise bike was left in the middle of the room and Plaintiff decided to move it to an area along a wall where other bikes were arranged. (Id. at 29:25-30:2).

When Plaintiff attempted to move the bike, the transport wheels did not drop down. Plaintiff decided to lift the bike and carry it to the wall. To do so, he bent down and placed his hand on the bike's center base beam near the small wheel mechanism. When he placed the bike back down onto the ground, the wheel mechanism swung shut, severing the tip of his ring finger. The bike did not have

---

[1] The parties stipulated that Plaintiff's deposition testimony from a prior state-court action would be admitted as evidence in this case. (See [37.2] at 8-9).

2

instructions or warnings on it stating the proper way to move the bike. (Keiser Dep. 25:9-13).

B. Procedural History

On November 11, 2016, Plaintiff filed his Complaint for personal injuries and damages [1]. The Complaint does not assert separate causes of action, alleging only that Defendant "placed a defective product in the stream of commerce," and "was negligent in the design and manufacture" of the bike. (Compl. ¶ 7-8). Plaintiff alleges that Defendant's negligence "was the proximate cause of the Plaintiff's injuries and damages." Id.[2] The Complaint does not expressly allege a claim for "failure to warn," nor does the Complaint allege that Plaintiff's injury was a result of absent or inadequate warnings on the exercise bike.

On November 28, 2016, the Court ordered Plaintiff to file an amended complaint to adequately allege the citizenship of the parties for purposes of invoking the Court's jurisdiction [3].

On December 7, 2016, Plaintiff filed his First Amended Complaint [4]. The deficiencies in Plaintiff's original Complaint were not cured.

---

[2] The Complaint further alleges that Defendant "breached the warranty of merchantability and fitness for a particular purpose" by placing the exercise bike in the stream of commerce. (Id. ¶ 9). Plaintiff later withdrew breach of warranty claim. ([45] at 2).

3

On December 9, 2016, the Court again ordered Plaintiff to amend his Complaint to adequately allege the citizenship of the parties [5]. The Court stated that it "will not allow Plaintiff any further opportunities to amend." ([5] at 4).

On December 22, 2016, Plaintiff filed his Second Amended Complaint, this time alleging sufficient facts to support the Court's jurisdiction [7].

On November 16, 2017, Defendant filed its Motion for Summary Judgment [36].

On December 29, 2017, Plaintiff filed his "Supplemental Clarification of Plaintiff's Claims," to "clarify the Plaintiff's claim that the subject exercise machine was defective and that his injuries occurred because of the inadequacy of any warnings on the subject machine . . . and the lack of any warnings written upon the machine" to warn users of the risk of injury. ([42]).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

B. Products Liability Standards under Georgia Law

Plaintiff appears to assert two theories of recovery: strict liability and negligence. See Ogletree v. Navistar Int'l Transp. Corp., 390 S.E.2d 61, 65 (Ga. Ct. App. 1989) ("An action in products liability may proceed on one or a combination of theories of negligence, strict liability, or breach of warranty."). This is evidenced by the Complaint allegations that "Defendant placed a defective product in[to] the stream of commerce and is strictly liable to the Plaintiff" and that Defendant "was negligent in the design and manufacture of the subject exercise bike." (Compl. ¶ 7-8).

1. Negligence Claims

Under Georgia law, the essential elements of a negligence cause of action are "(1) a legal duty to conform to a standard of conduct . . . ; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the

6

resulting injury; and (4) loss or damage from the breach." Davis v. Blockbuster, Inc., 575 S.E.2d 1, 2 (Ga. Ct. App. 2002) (citation and internal punctuation omitted).

Whether brought under a negligence or strict liability theory, the "*sine qua non* of a products liability claim . . . is a defect in the product." Boswell v. Overhead Door Corp., 664 S.E.2d 262, 263 (Ga. Ct. App. 2008) (affirming grant of summary judgment where plaintiff did not show defect in door). Because a manufacturer is "not an insurer that its product is, from a design viewpoint, incapable of producing injury," Banks v. ICI Americas, Inc., 450 S.E.2d 671, 675 (Ga. 1994), a plaintiff must prove a defect and that the defect was the proximate cause of his injury, Fouch v. Bicknell Supply Co., 756 S.E.2d 682, 687 (Ga. Ct. App. 2014).

### 2. Strict Liability Claims

The Georgia Supreme Court has held that O.C.G.A. § 51-1-11 imposes strict liability for defective products. Ctr. Chem. Co. v. Parzini, 218 S.E.2d 580, 582 (Ga. 1975). To establish a claim based on strict liability, plaintiffs are required to demonstrate that, when sold, the defendant's product was "not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1).

A plaintiff can base its strict liability claim on one of three categories of product defects: manufacturing, design, and marketing/packaging.  Banks, 450 S.E.2d at 672.  For each category, the questions are the same: "whether a product was defective, and if so, whether the defect was the proximate cause of a plaintiff's injury."  S K Hand Tool Corp. v. Lowman, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996).

A manufacturing defect generally "results from an error specifically in the fabrication process, as distinct from an error in the design process."  Fletcher v. Water Applications Distrib. Grp., Inc., 773 S.E.2d 859, 863 (Ga. Ct. App. 2015) (citing J. Kennard Neal, GA. Products Liability Law § 6:1, n.8 (4th ed.)).  Under a manufacturing defect claim, "it is assumed that the design of the product is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use."  Id. at 863 (quoting Banks, 450 S.E.2d at 673).

A manufacturing defect is one that is "measure[able] against a built-in objective standard or norm of proper manufacture."  Banks, 450 S.E.2d at 673, n.2 (quoting Bowman v. Gen. Motors Corp., 427 F. Supp. 234, 241 (E.D. Pa. 1977)).  "Thus, by definition, a manufacturing defect will always be identifiable as a deviation . . . or departure from the manufacturer's specifications established for the creation of the product."  Jones v. Amazing Prods., Inc., 231 F. Supp. 2d 1228,

1236 (N.D. Ga. 2002) (granting summary judgment to defendant because plaintiff did not present any evidence of manufacturing error).

In design cases "the entire product line may be called into question," i.e., "whether the manufacturer acted reasonably in choosing a particular product design, given . . . the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk." Id. at 673. The Georgia Supreme Court has identified the following non-exhaustive list of factors to be considered as part of a risk-utility analysis:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

Banks, 450 S.E.2d at 675 n.6.

To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant had a duty to warn; (2) the defendant breached that duty; and (3) the breach proximately caused his injuries. Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999). A manufacturer's duty to warn arises only when it

knows or reasonably should know of a danger from its product's use. Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994). This analysis further depends upon "the foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." Giordano v. Ford Motor Co., 299 S.E.2d 897, 899 (Ga. Ct. App. 1983) (citing Greenway v. Peabody Int'l Corp., 294 S.E.2d 541 (Ga. Ct. App. 1982)). "There is no duty to warn where it appears that the person using the product should know of the danger, or in using the product discover the danger." Cochran v. Brinkmann Corp., No. 1:08-cv-1790-WSD, 2009 WL 4823854, at *6 (N.D. Ga. Dec. 9, 2009). "The plaintiff asserting a failure to warn claim bears the burden of demonstrating that the danger causing injury was latent, not patent." Id.

    C.    <u>Analysis</u>

        1.    <u>Claims Based on the Failure to Warn</u>

Plaintiff raised his failure to warn claim for the first time in response to Defendant's summary judgment motion. The Complaint and its two amendments contain no mention of inadequate warnings on the exercise bike. Not until his "Supplemental Clarification of Plaintiff's Claims," filed after Defendant moved for summary judgment, did Plaintiff "further clarify" that "his injuries occurred because of the inadequacy of any warnings. . . and the lack of any warnings written

upon the machine." ([42]). For the reasons that follow, the Court will not consider Plaintiff's failure to warn claim under any theory of liability.

Despite the "liberal pleading standard for civil complaints," plaintiffs may not "raise new claims at the summary judgment stage." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam). At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). Id. at 1315. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Id. To permit a plaintiff to do otherwise would subject a defendant to unfair surprise. See White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1200 (11th Cir. 2015) (holding there was no basis for defendant to be on notice that plaintiff was alleging an employer-notice cause of action where three-page complaint contained no mention of the notice, or lack thereof, given by defendant to its employees).

Defendant had no notice of a failure to warn claim based on the facts and claims alleged in the Complaint. Plaintiff's failure to warn theory is factually distinct from the claims alleged in the Complaint suggesting a mechanical defect: "the wheels on the bottom of the exercise bike malfunctioned." (Compl. ¶ 6). Not until its response to Defendant's motion for summary judgment does Plaintiff state

"the 'defect' at issue in this case is the failure to warn, not the mechanics of Defendant's transport mechanisms." (Pl's Res. to Def's Statement of Undisputed Material Facts [44] ¶ 2). Despite two amendments, the four-page Complaint nowhere mentions the word "warn" or "warning." "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." <u>Gilmour</u>, 382 F.3d at 1315. The proper procedure for Plaintiff to assert a new tort claim was to seek to amend his complaint.

Defendant's lack of notice is evidenced by the fact that nowhere in its brief in support of its motion for summary judgment does Defendant discuss an alleged failure to warn. <u>See</u> <u>Joseph M. Still Burn Centers, Inc. v. Liberty Mut. Ins. Co.</u>, No. cv-108-090, 2010 WL 55471, at *13 (S.D. Ga. Jan. 6, 2010) ("The complete lack of notice of a third party beneficiary claim is further evidenced by the fact that Defendant did not address such a claim in its initial motion for summary judgment.").

That Plaintiff was that its failure to warn claim was not properly raised is evident by his filing of his "Supplemental Clarification of Plaintiff's Claims" after Defendant filed its motion for summary judgment. Plaintiff sought to clarify that "his injuries occurred because of the inadequacy of any warnings . . . and the lack

of any warnings written upon the machine." ([42]). This filing was an impermissible attempt to amend the Complaint. Defendant is entitled to summary judgment on Plaintiff's failure to warn claim.

Plaintiff's design defect claims fail for the same reason. Plaintiff asserts that Georgia law recognizes design defect claims based solely on inadequate warnings.[3] This issue is not before the Court, however, because the Complaint did not give notice of Plaintiff's failure to warn theory of liability. While the Complaint conclusorily asserts that Defendant "was negligent in the design and manufacture" of the bike, (Compl. ¶ 7-8), it did not apprise Defendant that Plaintiff was pursuing a theory of design defect liability based on inadequate warnings. Plaintiff raises no issue of fact regarding a design defect other than inadequate warnings. Defendant is entitled to summary judgment on Plaintiff's design defect claim.

    2.    <u>Manufacturing Defect</u>

In response to Defendant's motion for summary judgment, Plaintiff conclusorily alleges that the exercise bike had a manufacturing defect. He does not

---

[3] See <u>Boyce v. Gregory Poole Equipment Co.</u>, 605 S.E.2d 384, 390 (Ga. Ct. App. 2004) ("adequate warnings as to the proper or safe use of a product are part of the total design package of the product"); <u>Chrysler Corp. v. Batten</u>, 450 S.E.2d 208, 211 (Ga. 1994) ("some products are defective solely due to an inadequate or absent warning"); cf. <u>Battersby v. Boyer</u>, 526 S.E.2d 159, 162 (Ga. Ct. App. 1999) (explaining that design defect and failure to warn claims "are separate and distinct claims arising from different duties owed by [a] manufacturer to consumers").

13

allege any facts to specify the manufacturing defect that caused the injury or that the bike departed from Defendant's manufacturing specifications. While "[i]t is not necessary for the plaintiff to specify precisely the nature of the defect," he "must show that the device did not operate as intended and this was the proximate cause of his injuries." Kersey v. Dolgencorp LLC, No. 1:09-CV-898-RWS, 2011 WL 1670886, at *5 (N.D. Ga. May 3, 2011) (quoting Owens v. General Motors Corp., 613 S.E.2d 651, 654 (Ga. Ct. App. 2005)).

Plaintiff argues "the 'defect' is Defendant's failure to warn of the dangers associated with moving the exercise bike." ([45] at 15). He states: "[T]he 'defect' at issue in this case is the failure to warn, not the mechanics of Defendant's transport mechanisms." (Pl's Res. to Def's Statement of Undisputed Material Facts [44] ¶ 2). Plaintiff's scant allegations about inadequate warnings, even if accepted by the Court, do not support a claim that there was "an error specifically in the fabrication process, as distinct from an error in the design process." Fletcher, 773 S.E.2d at 863.

Plaintiff has not alleged sufficient facts to avoid summary judgment on his manufacturing defect claim. He does not allege the nature of the defect. See Shelton v. GALCO Int'l, Ltd., No. 3:16-cv-00033-TCB, 2017 WL 3597497, at *5 (N.D. Ga. July 19, 2017) ("Without pointing to specific evidence of a defect on the

14

part of GALCO, the Court is unable to find that a genuine issue of material fact exists as to Plaintiffs' negligence claim."); Graff v. Baja Marine Corp., No. 2:06-cv-68-WCO, 2007 WL 6900363, at *9 (N.D. Ga. Dec. 21, 2007) (finding that "it is implausible to infer a manufacturing defect from nothing more than a broken product"); Jones v. Amazing Prods., Inc., 231 F. Supp. 2d 1228, 1239 (N.D. Ga. 2002) (citing Center Chemical Co. v. Parzini, 218 S.E.2d 580, 582 (Ga. 1975)) ("Simply alleging that a product is dangerous, absent evidence of a deviation from the 'perfect' or prototypical [product], is not sufficient to demonstrate the existence of a manufacturing defect."). Defendant is entitled to summary judgment on Plaintiff's manufacturing defect claims.

Plaintiff's negligent manufacturing claim fails for the same reason. "In order to establish a negligent manufacturing claim, the plaintiff must come forward with evidence that, among other things, there was a defect in the product when it left the manufacturer that was caused by the manufacturer's negligence." Miller v. Ford Motor Co., 653 S.E.2d 82, 84 (Ga. Ct. App. 2007). Plaintiff has not made the required showing to defeat summary judgment.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Keiser Corporation's Motion for Summary Judgment [36] is **GRANTED**.

**SO ORDERED** this 12th day of June, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE